Filed 11/19/20  Marchetti v. Ford of Simi Valley, Inc. CA2/1
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ELIZABETH MARCHETTI, et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>FORD OF SIMI VALLEY, INC.,<br><br>Defendant and Respondent. | B297026<br><br>(Los Angeles County Super. Ct. No. BC700684) |

APPEAL from an order of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed in part and vacated in part.

Sanchez Law, J. Elias Sanchez; Liddle & Liddle, and Raymond Zakari for Plaintiffs and Appellants.

Manning, Leaver, Bruder & Berberich, Gary H. Prudian, and Kimberly L. Phan for Defendant and Respondent.

_____

Elizabeth and Frank Marchetti appeal from a trial court order granting Ford of Simi Valley, Inc.'s (FOSV) motion to compel arbitration. The Marchettis contend they did not consent to arbitration. Alternatively, they argue that the arbitration agreement is unenforceable because it purports to waive claims for public injunctive relief contrary to *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*). We will affirm the trial court's order.

## BACKGROUND

The Marchettis filed a class action complaint in April 2018 based on their December 2017 purchase of a 2015 Ford Explorer Sport from FOSV. The Marchettis alleged that FOSV advertised the vehicle for a specific price both on a cell phone app and on FOSV's Web site, but then refused to sell the vehicle for the advertised price.[1] The Marchettis purchased the vehicle at the higher price.

As part of their transaction, the Marchettis signed a document entitled "RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)."[2] In their opening brief, the Marchettis describe the contract as "a one page, double-sided form" that the

_____

[1] The complaint alleged that the vehicle was advertised for sale for $31,650, but that FOSV "steadfastly refused to sell the [vehicle] for anything less than $33,995 - $2,345 above the advertised price."

[2] The declaration of Frank Marchetti opposing the motion to compel arbitration explained that the Marchettis "paid in full" for the vehicle "on December 28, 2017 with no financing."

Marchettis objected to signing because it "was not suitable to [the Marchettis'] non-financed cash purchase, but Ford insisted that if Marchetti wished to purchase the vehicle, Marchetti had no option other than to do so with Ford's contract."

On the front page, the agreement contained a box that read: "**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate." The box included spaces for buyer and co-buyer signatures, both of which appear to contain signatures.

The back of the document contained the following:

ARBITRATION PROVISION
PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the *federal district where this contract was executed*. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

The Marchettis' complaint alleged violations of the Consumers Legal Remedies Act (CLRA) (Civ. Code, §§ 1750 et seq.), the False Advertising law (FAL) (Bus. & Prof. Code, §§

17500 et seq.), and the Unfair Competition law (UCL) (Bus. & Prof. Code, §§ 17200 et seq.). As part of their CLRA cause of action, the Marchettis requested on behalf of themselves and a putative statewide class "an injunction requiring [FOSV] to make appropriate changes to their sales practices such that they honor all advertised prices and no longer refuse to sell a vehicle for the price that vehicle has been advertised for sale." And as part of their UCL cause of action, the Marchettis requested that the trial court "enjoin [FOSV] from continuing to conduct business in a deceptive, unlawful, unfair and fraudulent manner so that the general public may be protected from the future wrongful conduct of [FOSV]. Specifically, [the Marchettis] request that [FOSV] be enjoined from selling used vehicles for any price in excess of the price at which those vehicles have been advertised for sale by [FOSV]."

FOSV moved the trial court for an order compelling arbitration and either dismissing or staying the case pending arbitration. The trial court concluded that the class action waiver in the arbitration agreement did not purport to require the Marchettis to waive their requests for public injunctive relief and was, therefore, enforceable. Based on its conclusion that the arbitration agreement did not purport to waive public injunctive relief, the trial court granted FOSV's motion to compel arbitration.

The Marchettis filed a timely notice of appeal.[3]

_____

[3] "A trial court order compelling arbitration ordinarily is reviewable only after the arbitration is complete and a party appeals from the resulting judgment." (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 888 (*Aanderud*).) In their notice of appeal, the Marchettis cited the death knell doctrine as

4

## DISCUSSION

The Marchettis contend that the trial court's order granting FOSV's motion to compel arbitration was flawed in two respects. First, the Marchettis argue that FOSV failed to establish the existence between the parties of an agreement to arbitrate. Second, the Marchettis argue that the arbitration agreement at issue is unenforceable as contrary to California public policy because it purports to require them to waive substantive claims for public injunctive relief.

### A. Applicable Law

"[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98, fn. omitted.) " 'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' [Citation.] Thus, an arbitration agreement is governed by contract law and is construed like other contracts to give effect to the intention of the parties. [Citations.] 'If contractual language is clear and explicit, it governs.' [Citations.]

the basis for appealability of the trial court's order. The death knell doctrine "permits the appellate court to review an order denying a motion to certify a class when it is unlikely the case will proceed as an individual action." (*Ibid.*) "The doctrine has been applied to permit immediate appeal from an order made in a putative class action requiring arbitration of individual claims and waiving class arbitration because such an order is effectively the 'death knell' of the class litigation." (*Ibid.*; accord *Franco v. Athens Disposal Co.* (2009) 171 Cal.App.4th 1277, 1288.)

5

"A petition to compel arbitration is simply a suit in equity seeking specific performance of a contract. [Citation.] The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. [Citation.]" (*Aanderud*, *supra*, 13 Cal.App.5th at p. 890.)

Our review is de novo. (*Aanderud*, *supra*, 13 Cal.App.5th at p. 890.)

## B. Assent to Arbitration Agreement

The Marchettis contend that FOSV did not carry its burden of proving the existence of an arbitration agreement because, according to the Marchettis, "it is clear that the form contract [that the parties signed] did not express the parties' mutual consent and understanding." The Marchettis contend that the contract is essentially meaningless because it is a *financing* agreement and the Marchettis did not *finance* their vehicle. FOSV "required [the Marchettis] to sign the form contract, with all of the financing terms, even though there was no question that [the Marchettis were] not agreeing to any of the financing terms because it was agreed that [the Marchettis were] paying the full purchase price," the Marchettis argue.

Whether the contract's financing provisions applied to the Marchettis' purchase, the arbitration provision—on its face—did: "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) . . . which arises out of or relates to your credit application, *purchase or condition of this vehicle*, this contract or any resulting transaction or relationship . . . shall . . . be resolved

6

by neutral, binding arbitration and not by a court action." (Italics added.)

Neither is the Marchettis' assent to the agreement ambiguous. In a box on the front page of the two-page agreement, the Marchettis signed under a paragraph that states: "By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate."

We conclude, as did the trial court, that an agreement to arbitrate exists between the parties.

## C. Arbitrability

The Marchettis contend that their claims against FOSV are not arbitrable because the arbitration agreement purports to waive claims for public injunctive relief. Citing *McGill*, they argue that the arbitration agreement's failure to carve out claims for public injunctive relief renders the arbitration agreement unenforceable. Among other responses, FOSV contends that the arbitration agreement's delegation clause delegates questions of arbitrability, including the enforceability of the arbitration agreement based on waiver of public injunctive relief, to the arbitrator. We agree with FOSV.

In *Henry Schein Inc. v. Archer and White Sales, Inc.* (2019) ___ U.S. ___, ___ (*Henry Schein*), the United States Supreme Court explained that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies

7

to a particular dispute is wholly groundless." "[A] court, in response to a motion by an aggrieved party, must compel arbitration 'in accordance with the terms of the agreement' when the court is 'satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.' " (*Id.* at p. ___.) We are satisfied that the parties entered into an agreement to arbitrate. The Marchettis have failed to comply. And the parties' agreement to arbitrate delegates questions of arbitrability to the arbitrator.

At least one other California court has reached the same conclusion. In *Aanderud*, *supra*, 13 Cal.App.5th 880, our colleagues in the Fifth District concluded that "it is the arbitrator who will consider the conscionability of the agreement and the scope of the arbitration clause, including whether the class arbitration is available under the arbitration provision, *and whether the provision purports to waive the Aanderuds' right to seek public injunctive relief in all fora and, if so, what impact this has on the enforceability of the arbitration provision as a whole*." (*Id.* at p. 897, italics added.)

We conclude that the Marchettis agreed to arbitrate their disputes, including questions of the interpretation and scope of their arbitration agreement and the arbitrability of specific claims. Consistent with that conclusion and the United States Supreme Court's guidance in *Henry Schein*, we affirm the trial court's order granting FOSV's motion to compel arbitration.

We note that in section II.B. of its order, the trial court reached conclusions about the enforceability of the parties' arbitration agreement based on its interpretation of the agreement and findings regarding public injunctive relief. As did our colleagues in *Aanderud*, we will vacate the portion of the trial

8

court's order in which the trial court made findings that the parties' arbitration agreement reserved for the arbitrator. (*Aanderud*, *supra*, 13 Cal.App.5th at p. 897.)

## DISPOSITION

Section II.B. of the trial court's order is vacated. The order granting the motion to compel arbitration is affirmed in all other respects, and the cause is remanded to the trial court for further proceedings consistent with this opinion. The respondent is awarded its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

FEDERMAN, J.[*]

---

[*] Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.